Fuller v. Sessions Our fourth case is Fuller v. Sessions Mr. Diesenhaus Good morning and may it please the Court, David Diesenhaus here on behalf of Petitioner Ray Fuller Mr. Fuller seeks this Court's review of the BIA order denying his motion to reopen his removal proceedings As this Court already determined in a previous decision issued in January it is clear from the existing record that Mr. Fuller identifies as bisexual and that given the severe violence and abuse directed at members of the LGBT community in Jamaica he will face a serious risk to life if he is forcibly returned there Now, Mr. Diesenhaus, I take it you would agree that if we remand this matter back to the Board it could still decline to reopen the proceedings sua sponte and in the absence of any legal error in doing so, Mr. Fuller would be out of luck at that point But your argument is that the Board has to appropriately recognize the basis for Mr. Fuller's motion and give meaningful consideration to the new affidavits he has presented before exercising its discretion on whether to reopen That is precisely right, Judge Rovner. You've well encapsulated our argument As this Court determined in Iglesias v. Mukasey what the BIA is obligated to do is register through its opinion that it has heard and thought about the arguments and evidence that a movement has presented So can I ask you this? I mean, Iglesias deals with what I'll call an ordinary motion to reopen It's one that, as far as I can tell reading the opinion, is made within the appropriate time and numerical limits And Mr. Fuller is appealing to the Board's so-called sua sponte authority Your opponent, of course, argues strongly that there's no jurisdiction at all in this Court to do anything about a sua sponte motion So I would appreciate your explaining why the Iglesias rule applies to this setting Absolutely, Your Honor Well, I think this Court's binding precedent is quite clear that jurisdiction exists I would point this Court's attention to the Anaya Aguilar decision and Zambrano-Reyes In each of those cases, the BIA was faced with a motion to reopen based on its sua sponte authority And when the BIA's decision to deny that motion was brought to this Court for review This Court determined that it was still entitled to review the BIA's denial for questions of law and constitutional questions The Zambrano-Reyes decision clearly states that And in Anaya Aguilar, the initial panel opinion does say that the Court has no jurisdiction or that a decision to deny based on the Board's sua sponte authority is unreviewable However, the panel then issued a subsequent order, which the government fails to cite, that clarified that it can review for questions of law What's the question of law? The question of law, Your Honor, is whether the BIA accurately and meaningfully considered the arguments and evidence that Mr. Fuller presented before deciding whether to exercise its discretion Isn't it a question of procedural predicates? I mean, you concede that if the BIA had jumped through the right hoops, had understood the issue and had articulated something about the evidence, then it was entirely free at that point to grant relief, not grant relief, do something in the middle Yes, Your Honor So it's a procedural, you're basically arguing, and where does that procedural right come from? Is it a constitutional right? Is it in the immigration statutes? Well, Your Honor, the precise source of it, I think, would just be grounded in notions of fairness and rationality This Court made clear in Joseph, in Fuller II, issued in January of this year that the BIA, when it embarks upon, or when it purports to determine whether extraordinary circumstances exist Okay, so there's a standard that the Board has created for itself Well, yes, there is that standard Now, application of that standard, how the Board decides whether extraordinary circumstances exist is confided to its discretion But that predicate question of, has it accurately and meaningfully set the table for that decision? Has it at least demonstrated that it comprehends the arguments and evidence that have been set before it is a legal question And I think this Court's decision in Arege v. Sessions is very helpful for this point That did involve a motion to reopen based on changed country conditions, which is slightly different But there, this Court reviewed purely for questions and errors of law And there, this Court determined that the BIA made a serious legal error when it inaccurately characterized the evidence that had been presented and ignored the evidence in the record Well, it comes down to these three letters, doesn't it? It does, Your Honor And didn't they consider these three letters? Not meaningfully and rationally Well, see, that's where you get into more scrutiny They did consider them They didn't ignore them They didn't ignore them, Your Honor We actually don't know what they did with them They said, we've looked at them, but apparently they didn't read them because they didn't understand that they related to credibility That's precisely right, Your Honor Although they invoke the letters or reference them we cannot have any confidence that the BIA read and understood those letters And as this Court stated in me, which we cite in our opening brief this Court cannot affirm the BIA if the basis for its decision is unclear The Court shouldn't have to divine or guess how the BIA construed the letters The BIA must make that clear As the Court said in Iglesias the BIA is required to demonstrate that it has heard and thought about the arguments and evidence presented It must engage in reasoned decision-making and it must consider the relevant factors that are material to an exercise of its discretion If I might demonstrate the BIA's failing in this case through way of an analogy If you ask someone, did you have dinner yesterday? and the response is, yes, it's a short answer but it is full and complete and you have no reason to believe that the person didn't understand the question However, if you ask, did you have dinner yesterday? and the person responds, yes, I had breakfast That's a longer answer and one that purports to engage with your question but it's one that demonstrates the person answering the question fundamentally misunderstood or didn't really answer in a responsive way and that's what the BIA did here It purported to engage with Mr. Fuller's motion and evidence but did so in a way that demonstrated it didn't understand the arguments that were made in the motion and the purpose of the evidence and the reason it was submitted If you'd like to save a bit of time, that would be fine Thank you, Your Honor Alright, Ms. Watson May I please report, Your Honor? Joanna Watson on behalf of the First Amendment, United States Attorney General I want to start with, in this particular case a sua sponte motion to reopen and the Board's sua sponte authority comes from the regulation It is not in the motion to reopen in Title 8 It does not discuss the Board's sua sponte authority So, in invoking 1252 A2D which allows for constitutional claims and legal claims the way this Court, in the past, has tethered that to discretionary determinations is not applicable in this case because, for instance, in Sevilla Posner said that 10 years of physical presence for cancellation of removal was a discretionary determination but yet you could look at a legal or constitutional claim Here, the underlying relief is cat protection Under 242, cat, Convention Against Torture Protection is reviewable so there's no reason to tether it doesn't make sense to tether that part of 242 to an exception for legal or constitutional It is or isn't reviewable We've said very clearly that deferrals of removal are reviewable They are So, the reasoning, though for instance, in Sevilla, where the Court looked at the reviewability of cancellation of removal which is discretionary then they went to 242 A2D for the legal and constitutional claim so that discretionary cancellation was tethered to 242 A2D the legal and constitutional claim but under 242 cat protection is not discretionary so to find a sua sponte in a sua sponte motion to reopen that the Court's authority for a legal and constitutional claim falls under 242 A2D OK, we'll look at that argument I'm not sure you've made that in your brief but the troublesome thing to me about what I understood the government's position to be in this case is that there are absolutely no standards that underlie as Mr. Diesenhaus put it the setting of the table that the Board could read every third line of his letters or the Board could throw his letters in the wastebasket or the Board could put knots in the letters all over the place and say he's not doing this or he's not doing that that there are just no standards and what we've said in a number of different contexts including actually in the sua sponte context is that while we have no authority to second guess the Board's exercise of its discretion we do have the authority to ensure that the Board gives a comprehensible explanation for what it's doing that the Board follow what I would just say fundamentally fair procedures if you look at the Board's entire statutory authority you know I don't think the Board says that they have the right to be arbitrary and capricious and to ignore things maybe that's their position I don't know they didn't ignore anything in this particular case but they they grossly they did indeed they did the Board obviously thought that Mr. Fuller wasn't challenging the IJ's adverse credibility finding but isn't it the obvious aim of both of Mr. Fuller's motions to tender new evidence you know in an effort to show that the IJ was wrong in making that credibility determination so in that sense didn't the Board commit a legal error? Not in this particular case his motion because again while Mr. Fuller argues in his opening brief that really the second motion was a piggyback on the first motion well because the Board lost his letters he sent letters in the first motion and the Board didn't file them in the right place those letters were not received by the Board until he filed that second motion so there's no but he attests that he sent them to the Board so the fact that they're not there is subject to one of two explanations that we can't resolve either he didn't mail them so he mails them again or he did mail them and the Board just misplaced them and they didn't log them in properly so there's no record at the Board of receipt but we don't know which of those things happened but the only thing before the Court now is that one motion that he filed with the letters with the letters and he explained if you look at the letters and if you particularly go back to the original IJ and Board opinions you can see and certainly in the first opinion in this case what does happen in Ocho Rios what does happen you know and these are witnesses at great personal cost to themselves given the atmosphere in Jamaica who are corroborating his story they are showing that he is credible that's what the that's the only way you can read these letters they're in the record at this point we've all read them but it was his burden when he filed this motion to explain how these letters would alter the outcome of his case and he does none of that in his motion whatsoever he doesn't write he's pro se he doesn't write a long brief about it but it's blindingly obvious how they relate he doesn't even discuss anything that's in the letters to try to overcome because there were I mean the adverse credibility were you unclear about what these letters related to in the record I can't believe you were they're plain they're about the specific incidents that were in the record and it was also a specific incident that he was off by 10 years of saying when the incident happened and nothing in those letters rectifies that I was shot in college or maybe it was 10 years and then possibly it was but if he was shot you know for all I know it happened twice I mean I don't know but the letters provide important corroboration for key parts of his account that's all they that's what they do the board doesn't even give us the courtesy of saying we've read the letters and we don't think we can't figure out what they relate to or we've read the letters and we don't think these are reliable witnesses or we've read the letters and we don't think being shot at is a big problem I mean they don't say anything if they had said any of those things I think we'd have a different case but all there is no legal error here because the board they referenced the letters they looked at the letters this is not they don't say anything but we've seen the letters correct and this is also not and they don't change our mind and we don't know why we don't know any of the reasons why in the social security area we constantly send things back for more proceedings if people don't build a logical bridge as we constantly say but again this isn't like a motion to reopen based on changed country conditions where you're trying to say that conditions were different from the removal hearing until now it's different and it's the same you're right it's different at that level but it's also the same in that we don't have any authority to second guess the board's assessment about whether country conditions have changed enough to allow somebody let's say to go forward with a late petition but we can make sure that procedurally this is done in the right way and from a procedural standpoint they did look at it and I mean from their jurisdiction but they don't explain anything we don't know what they thought we don't know if they're all Spanish speakers and they couldn't read the letters but it has to show that they reference the letters so clearly they looked at the letters so it's enough to say so the board never has to do anything all the board has to do is say oh we see there's some letters here we're not going to read them but we're just going to say the letters don't change our mind in all the cases petitioners cited where it's an issue of not fully looking at the evidence are changed country conditions they were in terms of that why does that matter? why does that matter? because under this scenario a petitioner who has been found not credible and his claim was denied and it's been upheld by a court of appeals could always go back and say sui sponte reopen my proceedings so we can re-litigate a credibility determination all the board has to do is explain you know here's the issue here's why we don't find these letters change our mind reason A, reason B and honestly you wouldn't be here he wouldn't be here so I don't think I don't think your fear of a flood of litigation is at all realistic if the board just does it's job they did show they referenced the letters when they denied to invoke it's extraordinary you know it's extraordinary circumstance which the court has said you know it can't review and they looked at it and said it wasn't going to change that underlying decision it wasn't going to change their prior motion the first motion to reopen that he filed and that it's not going to change what you're saying is that the question of law is brought up and that's whether the board dealt with the three letters correct whether they looked at the three there's no indication what you're saying is that the fact is they did receive and did consider these three letters correct they did not go into detail about the three letters said and why they didn't think they added anything that they already saw maybe they said something like that but that's it and you're saying under this when you're talking about sui sponte jurisdiction that that's all that is needed correct under the sui sponte even though the board thought he wasn't challenging the IJ's adverse credibility finding even though the board was either so mixed up or so blind to whatever it was he was saying you're saying that's fine well this is putting the burden on the board when the burden of a motion to reopen is on the alien filing it it's a heavy burden to meet to say especially when you're saying sui sponte reopened my proceedings and you file one page and say I want to prove my credibility here's three letters but not explain how those three letters would alter the prior decisions anyone reading the letters would understand anyone but it ultimately even under the court's limited jurisdiction you're a little over time but I'm I'm going to give Mr. Deason two minutes to rebut really quickly even if here you found that the board didn't give enough explanation for not finding that these letters all of a sudden find him credible and we do not find that his letters of support would materially alter these findings period that's its explanation right and it cites to the prior decision it cites to its decision upholding the immigration judge it cites to the decision denying his first motion to reopen as well which didn't have the letters correct which did not have the letters and I put a footnote into it  that these letters are missing please tell me whether you found them or some these two letters he says and then on his second motion to reopen and it's three letters that he's submitting so but I mean well you could wrap up if you would like yeah so I asked if the court were to find jurisdiction 242 A2D is not the proper vehicle for it and the court did there is no legal there didn't no legal error because they reviewed all of the other thank you very much Mr. Deason House I won't hold you to the two minutes thirty eight seconds if you need a little bit more alright well your honor I would just like to direct this court's attention to the decision Sanchez v. Sessions which we cite in our briefs there as this court noted or the as it explained the BIA's decision in that case the board concluded but without explanation that none of the evidence would have likely altered the outcome of this case with regard to certain factual findings that is strikingly similar to the language the BIA used here and in Sanchez this court said that that sort of correction was not likely to pass muster on judicial review nor should the BIA's cursory and unreasoned decision pass muster here if your honors have no further questions Judge Mannion no no alright thank you very much thank you very much your honor and we appreciate very much your accepting this assignment from us it's a help to the court and help to your client so thank you as well to your firm thank you and thanks to the government so we will take this case under advisement